UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DARLENE FROHM,

               Plaintiff,

     v.

CITY AND COUNTY OF SAN
FRANCISCO,

               Defendant.

Case No. 22-cv-06002-JST

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT**

Re: ECF No. 87

Before the Court is a motion for summary judgment brought by Defendant City and

County of San Francisco ("the City"). ECF No. 87. The Court will grant the motion in part and

deny it in part.

I.     **BACKGROUND**

Plaintiff Darlene Frohm, a Black woman, worked for the City's Office of Contract

Administration from February 2000 until April 2018, when she was appointed to a temporary

CAT 17 position as Assistant to the Deputy Director of Operations in the Public Works

Department.[1] That position was classified at the 0932 Manager IV level of the City's job

classification system. Frohm contends that she was qualified for, and was already performing the

work of, the higher 0941 Manager VI classification, but that the City did not promote her to the

higher classification. In her initial complaint, she alleged that she was discriminated against on

the basis of race, in violation of both the California Fair Employment and Housing Act ("FEHA")

---

[1] "CAT 17" refers to Category 17 under Section 10.104 of the City's Charter, which excludes
from competitive civil service selection "[a]ppointments, which shall not exceed two years and
shall not be renewable, as substitutes for civil service employees on leave."
https://codelibrary.amlegal.com/codes/san_francisco/latest/sf_charter/0-0-0-1076
[https://perma.cc/ZK65-7NJF].

United States District Court
Northern District of California

United States District Court
Northern District of California

1    and Title VII, and that she was unlawfully retaliated against under FEHA after she complained

2    about that discrimination.  She also alleged that the City's failure to pay her the same as male

3    colleagues violated the federal Equal Pay Act, and that its failure to pay her the same as non-Black

4    colleagues violated Title VII.

5              The City moved to dismiss the initial complaint, and Frohm amended her complaint rather

6    than oppose the motion.  The City then moved to dismiss the first amended complaint.  The Court

7    concluded that Frohm sufficiently alleged discrimination claims, but it dismissed her retaliation

8    and Equal Pay Act claims, with leave to amend except as to her California Equal Pay Act claim.

9    ECF No. 36.

10             Frohm timely filed a second amended complaint, and the City moved to dismiss only the

11   retaliation claims.  The Court granted that motion in part and denied it in part.  ECF No. 62.  The

12   Court dismissed Frohm's retaliation claims as to Deputy Director of Finance and Administration

13   Julia Dawson's alleged failure to approve a 0941 position requested by Alaric Degrafinried, then

14   the Acting Director of Public Works, in 2020; the City's failure to select Frohm for an interview

15   for the 0954 Deputy Director of Operations position; and Frohm's remaining in her 0932 position

16   on a backfilled basis instead of being allowed to fill it on a permanent basis.  *Id.* at 3–4.  However,

17   the Court denied the motion as to the City's alleged failure to reclassify Frohm to a 0941 position

18   in August 2021.  *Id.* at 4.  The Court granted leave to amend, but Frohm did not file an amended

19   complaint to address the deficiencies identified by the Court.

20             Frohm subsequently sought leave to file a "first supplemental complaint" to allege facts

21   surrounding her October 18, 2023 termination, which occurred after she filed the second amended

22   complaint.  The City did not oppose the motion, and the Court granted it.  Frohm filed her first

23   supplemental complaint, which is now the operative complaint, on March 5, 2024.  ECF No. 69.

24             The City now moves for summary judgment on Frohm's discrimination and EPA claims,

25   and for partial summary judgment on her retaliation claims.  ECF No. 91.  It does not seek

26   summary judgment on Frohm's retaliation claims regarding her termination.

27             As the City correctly observes, Frohm's opposition to the motion was untimely.  It was due

28   by 5:00 p.m. on November 14, 2024, but was not filed until 11:46 p.m. on that date.  Standing

United States District Court
Northern District of California

1    Order for All Civil Cases Before District Judge Jon S. Tigar, available at

2    https://www.cand.uscourts.gov/judges/tigar-jon-s-jst/; ECF No. 90.  The Court has nonetheless

3    considered the opposition.

4    **II.    LEGAL STANDARD**

5        Summary judgment is proper when a "movant shows that there is no genuine dispute as to

6    any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

7    A dispute is genuine only if there is sufficient evidence "such that a reasonable jury could return a

8    verdict for the nonmoving party," and a fact is material only if it might affect the outcome of the

9    case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When deciding a motion for

10   summary judgment, the court must draw "all justifiable inferences" in the nonmoving party's

11   favor and may not weigh evidence or make credibility determinations.  *Id.* at 255.

12       Where the party moving for summary judgment would bear the burden of proof at trial,

13   that party "has the initial burden of establishing the absence of a genuine issue of fact on each

14   issue material to its case."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474,

15   480 (9th Cir. 2000).  Where the party moving for summary judgment would not bear the burden of

16   proof at trial, that party "must either produce evidence negating an essential element of the

17   nonmoving party's claim or defense or show that the nonmoving party does not have enough

18   evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire &*

19   *Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party satisfies

20   its initial burden of production, the nonmoving party must produce admissible evidence to show

21   that a genuine issue of material fact exists.  *Id.* at 1102–03.  It is not the court's duty "to scour the

22   record in search of a genuine issue of triable fact"; instead, the nonmoving party must "identify

23   with reasonable particularity the evidence that precludes summary judgment."  *Keenan v. Allan*,

24   91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251

25   (7th Cir. 1995)).  If the nonmoving party fails to make the required showing, the moving party is

26   entitled to summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

27

28

1    **III.    DISCUSSION**

2         **A.    Discrimination**

3         Frohm brings discrimination claims under both FEHA and Title VII.  "FEHA is interpreted

4    consistently with Title VII," *Ambat v. City and County of San Francisco*, 757 F.3d 1017, 1023 n.2

5    (9th Cir. 2014), and "California courts look to pertinent federal precedent when applying [state

6    employment discrimination] statutes," *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (2000).  The

7    Court therefore analyzes Frohm's state and federal discrimination claims together.

8         Under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

9    (1973), the plaintiff must first establish a prima facie case of discrimination by showing that:

10    (1) they belong to a protected class; (2) they were qualified to do the job; (3) they were subject to

11    an adverse employment action; and (4) "similarly situated individuals outside [their] protected

12    class were treated more favorably, or other circumstances surrounding the adverse employment

13    action give rise to an inference of discrimination."  *Peterson v. Hewlett-Packard Co.*, 358 F.3d

14    599, 603 (9th Cir. 2004).  If "the plaintiff establishes a prima facie case, a presumption of

15    discrimination arises," and "the burden then shifts to the employer to rebut the presumption by

16    producing admissible evidence . . . that its action was taken for a legitimate, nondiscriminatory

17    reason."  *Guz*, 24 Cal. 4th at 355–56.  If the employer meets that burden, "[t]he plaintiff must then

18    have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or

19    to offer any other evidence of discriminatory motive. . . .  The ultimate burden of persuasion on

20    the issue of actual discrimination remains with the plaintiff."  *Id.* at 356.  "If a rational trier of fact

21    could, on all the evidence, find that the employer's action was taken for impermissibly

22    discriminatory reasons, summary judgment for the defense is inappropriate."  *Wallis v. J.R.*

23    *Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

24              **1.    Promotions**

25         The operative complaint alleges that the City "discriminated against Ms. Frohm based on

26    her race by denying her promotion to positions for which she was qualified and offering such

27    positions to non-Black persons with equal or lesser qualifications."  ECF No. 69 ¶ 68 (FEHA); *id.*

28    ¶ 75 (Title VII).  At her deposition, Frohm stated that these claims were based on denial of

United States District Court
Northern District of California

4

1    promotions to three permanent positions classified at the 0932, 0941, and 0954 levels.  ECF No.

2    87-1 at 80.

3        To be hired into any of these positions, an applicant must pass the City's management test

4    battery ("MTB").  ECF No. 87-1 at 211; ECF No. 87-4 at 71.  Frohm took the MTB when she

5    applied for a 0941 position in 2023, and she received a score of 52.6.  ECF No. 87-5 at 3.  "For

6    any City job announcement requiring the MTB as part of the selection process, the same

7    examination is used, with the same required passing score of 55.8 or greater."  *Id.*  Thus, Frohm

8    did not receive a passing score on the MTB, and she has therefore not demonstrated that she was

9    qualified for any permanent 0932, 0941, and 0954 positions.  Because a plaintiff must demonstrate

10   they are "qualified for the position [they] sought" to prevail on a discrimination claim, Frohm's

11   failure to pass the MTB is fatal to her claims regarding failure to promote to any of these

12   positions.  *Guz*, 24 Cal. 4th at 355 (citing *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253

13   (1981)).[2]

14               **2.    Equal pay under Title VII**

15       Frohm also contends that the City violated Title VII because it "wrongfully refused to pay

16   Ms. Frohm equal to non-African American colleagues on the basis of her race."  ECF No. 69 ¶ 76.

17   She argues that, although classified at the 0932 level, she was performing the duties of a 0941

18   manager and should have been paid as much as three white employees who were employed at the

19   0941 level and who performed substantially equal work.  Citing *Jaburek v. Foxx*, 813 F.3d 626,

20   631 (7th Cir. 2016), the City argues, and Frohm does not rebut, that this claim should be analyzed

21   under a failure-to-promote framework.  The Court agrees.

22       Applying that framework, Frohm's Title VII equal pay claim fails for the same reason as

23   her discrimination claims:  She cannot show that she was qualified for a 0941 position because she

24   failed the required MTB.  In addition, Frohm bases her claim on "non-Black HR and Finance and

25   Administration staff that blocked" the efforts of "Frohm's Black supervisors . . . to get her a 0941

26   position approved" at various times between 2019 and 2023.  ECF No. 90 at 22.  But Frohm's

27

28   ───────────────

[2] The Court does not reach the parties' remaining arguments on these claims.

United States District Court
Northern District of California

1    recitation of facts relies only on the fact that certain staff were not Black; she does not cite

2    evidence giving rise to an inference of racial discrimination by these individuals.  Nor does she

3    cite any authority, and the Court is aware of none, for the proposition that simply being of a

4    different race "suggests discriminatory motive."  *Guz*, 24 Cal. 4th at 355.

5              **3.      Other claims raised in Frohm's opposition brief**

6              The City objects to consideration of three arguments it contends Frohm raised for the first

7    time in her opposition brief: that she was discriminated against on the basis of race when (1) she

8    was required to take the MTB for the temporary 0941 position to which she applied in 2023;

9    (2) her temporary 0932 position was not made permanent under the City's Exempt to Permanent

10   Status ("E2P") program; and (3) she was removed from her 0932 position in 2023 and reverted

11   back to her supervising purchaser position, which was classified at the lower 1958 level.

12             "[S]ummary judgment is not a procedural second chance to flesh out inadequate

13   pleadings."  *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006)

14   (quoting *Fleming v. Lind–Waldock & Co.*, 922 F.2d 20, 24 (1st Cir.1990)).  Thus, where a plaintiff

15   does not disclose a basis for liability "either in the operative complaint or in [their] discovery

16   responses," the court may refuse to consider those allegations at summary judgment.  *Barrilleaux*

17   *v. Mendocino County*, No. 14-cv-01373-DMR, 2018 WL 3585133, at *9 (N.D. Cal. July 26, 2018)

18   (citing *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968–69 (9th Cir. 2006); *Coleman v.*

19   *Quaker Oats Co.*, 232 F.3d 1271, 1292-94 (9th Cir. 2000)).

20             The Court ordered supplemental briefing to allow Frohm to respond to the City's

21   timeliness arguments and the City to reply to Frohm's response.  ECF No. 93.  Having reviewed

22   the record and the parties' supplemental briefs, the Court concludes that Frohm's opposition raised

23   new bases for liability but that, even if the Court were to consider those claims, it would conclude

24   that Frohm has not presented sufficient evidence to survive summary judgment.

25             First, as to the requirement to take the MTB for the 0941 position in 2023, Frohm does not

26   argue that she included that allegation in her complaint or in her response to the City's

27   interrogatory asking her to identify all adverse actions that she alleged the City took against her,

28   ECF No. 87-1 at 268–70.  Instead, she states that she testified at her deposition that DiJaida

United States District Court
Northern District of California

1    Durden, Deputy Director of Operations, told her, "we don't have the Management Battery Test on

2    temporary position[s], and it was going to be removed.  But if it's not removed, take the test; and

3    eventually, . . . for a permanent position, you have to take the test."  ECF No. 94-1 at 14.  She also

4    cites to a declaration from Larry Stringer, former Deputy Director of Operations, "confirm[ing]

5    what Ms. Frohm had already testified to," ECF No. 94 at 3 (citing ECF No. 90-3 ¶¶ 7–8), but that

6    declaration was executed on November 14, 2024, ECF No. 90-3 at 3, the date Frohm filed her

7    opposition to the City's summary judgment motion and after the close of discovery.  The Court

8    agrees with the City that Frohm's lone deposition statement is insufficient to put the City on notice

9    that Frohm intended to assert a discrimination claim based on the City's requiring her to take the

10   MTB.  Frohm did not make that allegation in her complaint, identify it as a basis for her

11   discrimination claims during her deposition, or identify it as an adverse action in her interrogatory

12   responses.  But even if the Court were to consider the claim, Frohm has cited no evidence

13   indicating that other persons applying to that position were not required to take the MTB, or any

14   other evidence giving rise to an inference that the decision to require Frohm to take the MTB was

15   based on race.

16        Second, as to the E2P program, Frohm acknowledges that she did not raise the argument in

17   her complaint but argues that she did so in discovery.  However, none of the evidence she cites

18   refers to the E2P program.  *See* ECF No. 94 at 2–3.  Frohm correctly observes that her

19   interrogatory responses stated that she was discriminated against because, "[i]n May 2023,

20   plaintiff was denied the opportunity to extend her position and apply to fill a permanent position

21   equivalent to the position that she was serving in on a temporary basis," and "[o]thers in the

22   department were able to have their positions extended past the June 30, 3023 deadline."  ECF No.

23   87-1 at 269.  But, as the City notes, Frohm "presents no evidence regarding the [E2P's] program's

24   parameters, such as its duration, scope, or eligibility requirements" or "evidence that her 0932

25   CAT 17 Manager IV position was eligible for the program."  ECF No. 91 at 6.  The only evidence

26   Frohm cites regarding the E2P program is testimony from Durden's deposition, stating that Frohm

27   "may have" requested to use the program to make her 0932 position permanent; that Human

28   Resources said the position did not qualify; and that other positions within the Operations

United States District Court
Northern District of California

1   department did become permanent through the E2P program.  ECF No. 90-1 at 57–59.  This is not

2   evidence that failure to make Frohm's position permanent through the E2P program was based on

3   race.  Moreover, as discussed above, Frohm did not receive a passing score on the MTB, and she

4   therefore has not demonstrated that she was qualified for a permanent 0932 position.

5          Finally, as to reversion to her 1958 position, the complaint does include allegations

6   regarding Frohm's request to stay in her temporary 0932 position past the June 30, 2023

7   expiration date, that she was not allowed to do so, and that instead she could revert to her 1958

8   position.  ECF No. 69 ¶¶ 54–57.  But these allegations were not alleged as a basis for Frohm's

9   discrimination claims.  To the contrary, both her FEHA and Title VII discrimination claims are

10  based on "denying [Frohm's] promotion to positions for which she was qualified and offering

11  such positions to non-Black persons with equal or lesser qualifications."  *Id.* ¶¶ 68, 75.

12  Additionally, although Frohm testified that she believes she was "denied the ability to stay on past

13  the June 30 deadline because of [her] race," she named only two individuals who were allowed to

14  keep their temporary positions past that deadline, and she identified both individuals as Black.

15  ECF No. 94-1 at 17; ECF No. 90-1 at 42.  She has thus failed to identify any similarly situated

16  persons from outside her protected class who "were treated more favorably, or other circumstances

17  surrounding the adverse employment action [that] give rise to an inference of discrimination."

18  *Peterson*, 358 F.3d at 603.

19         For all of the above reasons, the City's motion for summary judgment is granted as to

20  Frohm's discrimination claims.

21     **B.     Retaliation**

22         Frohm brings her retaliation claims only under FEHA.  The *McDonnell Douglas* burden-

23  shifting framework also applies to such claims:

24         [T]o establish a prima facie case of retaliation . . . , a plaintiff must
       show (1) [they] engaged in a "protected activity," (2) the employer
25     subjected the employee to an adverse employment action, and (3) a
       causal link existed between the protected activity and the employer's
26     action.  Once an employee establishes a prima facie case, the
       employer is required to offer a legitimate, nonretaliatory reason for
27     the adverse employment action.  If the employer produces a
       legitimate reason for the adverse employment action, the
28     presumption of retaliation "drops out of the picture," and the burden

United States District Court
Northern District of California

shifts back to the employee to prove intentional retaliation.

*Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005) (citations omitted).

In her opposition, Frohm asserts three bases for her retaliation claim: (1) failure to grant Durden's June 2021 request to upgrade Frohm's 0932 position to a 0941 position; (2) not allowing Frohm to transition from a temporary 0932 position to a permanent 0932 position in July 2021; and (3) failure to move Frohm to a 0941 position suing a CAT 18 temporary placement in November 2021.[3]  ECF No. 90 at 30–31.

The Court previously dismissed Frohm's retaliation claim as to the second asserted basis:

> Frohm alleges that she has been in her current 0932 position since April 2018, beginning on a backfilled basis, and that the permanent position was allowed to remain vacant for three years after the prior holder resigned in 2020.  [ECF No. 41] ¶¶ 18, 32.  She contends that she was retaliated against because she was not allowed to fill the position on a permanent basis for those three years.  However, she does not allege that her being in the position on a backfilled basis had any material effect on "the terms, conditions, or privileges of employment," as required to state a retaliation claim.  *Yanowitz*, 36 Cal. 4th at 1052.  The Court therefore grants the City's motion as to the 0932 position.

ECF No. 62 at 4.  Frohm did not file an amended complaint to attempt to cure these deficiencies, and the claim is therefore no longer part of this lawsuit.

As to the first and third asserted bases, the City argues that Frohm did not raise them in the complaint or identify them during discovery as bases for her retaliation claim.  In her supplemental response, Frohm did not assert that these allegations were contained her complaint or in any written responses to discovery.  Instead, she relied on only eight lines from her deposition:

> Q.  Are there any other actions that happened to you that you feel were retaliatory besides not getting a position or promotion like you've been describing?
>
> A.  Well, it's not that I didn't get a position or a promotion; it's that the process was not followed.
>
> So, because the process was not followed, I didn't get the same

---

[3] "CAT 18" refers to Category 18 under Section 10.104 of the City's Charter, which excludes from competitive civil service selection "[a]ppointments, which shall not exceed three years and shall not be renewable, for special projects and professional services with limited term funding." https://codelibrary.amlegal.com/codes/san_francisco/latest/sf_charter/0-0-0-1076 [https://perma.cc/ZK65-7NJF].

United States District Court
Northern District of California

1          opportunity as other people did.  So, for right now, that's all I can
          think of right now.

2    ECF No. 94-1 at 20 (cited by ECF No. 94 at 5).  The Court agrees with the City that this "vague

3    assertion . . . was insufficient to put the City on notice of the very specific claims raised in her

4    opposition" as to the CAT 18 temporary placement in November 2021.  ECF No. 95 at 6.  Thus,

5    the Court need not consider that argument at summary judgment.  *Barrilleaux*, 2018 WL 3585133,

6    at *9.  Moreover, even if the Court did consider it, Frohm identifies Kimberly Castillo as the only

7    decisionmaker, ECF No. 90 at 31, but has not presented any evidence that Castillo knew of

8    Frohm's alleged protected activity.  This would be insufficient to survive summary judgment

9    because "the decisionmaker's knowledge of the protected activity is an essential element" of a

10   FEHA retaliation claim.  *Adams v. Kmart Corp.*, No. C 00-03885 WHA, 2001 WL 969049, at *4

11   (N.D. Cal. Aug. 10, 2001) (citing *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 69–70

12   (2000)).

13          As to the denial of Durden's request to upgrade Frohm's position, however, although

14   Frohm did not cite this in her supplemental response, *see* ECF No. 94 at 5, the complaint contains

15   allegations regarding that request.  ECF No. 69 ¶ 44.  In fact, the Court denied the City's motion to

16   dismiss Frohm's retaliation claim "as to HR's alleged failure to reclassify Frohm to a 0941

17   position in August 2021," which is when Frohm contends the City denied Durden's request.  ECF

18   No. 62 at 4.  The City argues that Frohm identifies Castillo as the only decisionmaker as to this

19   action as well, but that misstates the record.  Frohm does not clearly identify whom she contends

20   denied Durden's request, but the record contains some evidence that the decision was made after a

21   meeting that included Degrafinried, Human Resources Director Chanda Ikeda, and Employee and

22   Labor Relations Division Director Svetlana Vaksberg, and that these individuals knew of Frohm's

23   complaints.  ECF No. 90-1 at 201–03, 230–31; ECF No. 94-1 at 28–29.  Nor is the Court

24   persuaded by the City's argument that failure to upgrade Frohm's classification to 0941 was not an

25   adverse employment action because Frohm would have had to compete for any position that was

26   created.  As the case relied on by the City itself explained, "adverse treatment that is reasonably

27   likely to impair a reasonable employee's . . . prospects for advancement or promotion" may form

28   the basis for a retaliation claim.  *Yanowitz*, 36 Cal. 4th at 1054–55.  The Court therefore does not

United States District Court
Northern District of California

10

1    grant summary judgment as to this claim.

2         **C.**     **Equal Pay Act**

3              **1.**     **Merits**

4         The EPA prohibits an employer from paying lower wages to employees of one sex "for

5    equal work on jobs the performance of which requires equal skill, effort, and responsibility, and

6    which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). Claims under the

7    EPA "have just two steps." *Rizo v. Yovino*, 950 F.3d 1217, 1223 (9th Cir. 2020). First, the

8    "employee bears the burden of establishing a prima facie case of wage discrimination by showing

9    that 'the employer pays different wages to employees of the opposite sex for substantially equal

10    work.'" *Id.* at 1222 (quoting *Maxwell v. City of Tucson*, 803 F.2d 444, 446 (9th Cir. 1986)). If the

11    employee meets that burden, then "the burden shifts to the employer to show that the differential is

12    justified under one of the Act's four exceptions." *Id.* (quoting *Corning Glass Works v. Brennan*,

13    417 U.S. 188, 196 (1974)). The four exceptions are when differential payments are "made

14    pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by

15    quantity or quality of production; or (iv) a differential based on any other factor other than sex."

16    29 U.S.C. § 206(d)(1). The City invokes the fourth exception here, which, like the first three, is

17    "limited to job-related factors." *Rizo*, 950 F.3d at 1225. The legislative history of the EPA

18    indicates that Congress intended "that a bona fide job classification program that does not

19    discriminate on the basis of sex will serve as a valid defense to a charge of discrimination."

20    *Corning Glass Works*, 417 U.S. at 201 (quoting H.R. Rep. No. 88-309, *reprinted in* 1963

21    U.S.C.C.A.N. 687, 689).

22         Frohm does not contest any of the City's evidence regarding its classification and

23    compensation system, but the fact that Frohm's position was classified as a 0932 Manager IV

24    position while the male employees to whom she compares herself worked in higher-classified

25    0941 Manager VI positions is not dispositive. As one of the cases relied on by the City explained:

26              [E]mployers cannot meet their burden of proving that a factor-other-
than-sex is responsible for a wage differential by asserting use of a

27              gender-neutral classification system without more. Rather,
Congress intended for a job classification system to serve as a

28              factor-other-than-sex defense to sex-based wage discrimination

United States District Court
Northern District of California

1

2

> claims only when the employer proves that the job classification
> system resulting in differential pay is rooted in legitimate business-
> related differences in work responsibilities and qualifications for the
> particular positions at issue.

3    *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 525 (2d Cir. 1992).  "Surely," the court

4    continued, "Congress did not intend that an employee would lose an EPA claim after making out a

5    prima facie case of wage discrimination simply because, for example, the employer chooses to call

6    one employee a cleaner and another employee a custodian."  *Id.*

7        In its motion, although the City "disputes that Plaintiff was performing the same or

8    substantially equal work in comparison to Mr. Naclerio or Mr. Keenan," two white men in 0941

9    Superintendent positions within the Department of Public Works, it argued that "the Court need

10   not reach that issue for purposes of this motion."  ECF No. 87 at 27.  The City thus did not attempt

11   to establish a lack of disputed facts as to whether Frohm and her comparators performed the same

12   or substantially equal work.  However, if, as the City assumes for purposes of this motion, Frohm

13   did perform the same or substantially equal work as Naclerio or Keenan, then that is some

14   evidence that the City's classification system was not "rooted in legitimate business-related

15   differences in work responsibilities and qualifications for the particular positions at issue."

16   *Aldrich*, 963 F.3d at 525.  The City therefore has not demonstrated a lack of disputed material

17   facts on its affirmative defense that the pay differential was based on a factor other than sex, and

18   the Court denies the City's motion as to Frohm's EPA claim.

19                    **2.        Statute of Limitations**

20       The City also seeks summary judgment on the applicable statute of limitations.  EPA

21   claims are subject to a two-year statute of limitations unless the action "aris[es] out of a willful

22   violation," in which case the statute of limitations is three years.  29 U.S.C. § 255(a).  Willfulness

23   in this context requires a showing "that the employer either knew or showed reckless disregard for

24   the matter of whether its conduct was prohibited by the statute."  *McLaughlin v. Richland Shoe*

25   *Co.*, 486 U.S. 128, 133 (1988).  Courts do "not presume that conduct was willful in the absence of

26   evidence."  *Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003).

27       Frohm "agrees that since her lawsuit was filed on August 8, 2022, her recovery without

28   showing willful violation goes back to August 8, 2020," but she "contends there was a willful

United States District Court
Northern District of California

violation and therefore her recovery will go back to August 8, 2019." ECF No. 90 at 28.

However, Frohm cites no legal authority to support her contention. She cites evidence regarding

the process a City employee might follow if they believed they were entitled to a higher

classification, and she asserts that she "spoke to her supervisors informing them she was

performing work above her classification and requested higher pay," but that "an audit on her

classification was never performed, nor was she provided with acting pay nor was the work taken

away from her." *Id.* However, none of the cited testimony goes to whether the City knew or had

reckless disregard for whether its classification of Frohm's job as a 0932 position violated the

EPA, which is the relevant question for determining if the three-year statute of limitation applies.[4]

Consequently, the Court cannot conclude that there are disputed material facts as to the City's

willfulness, and it will therefore apply a two-year statute of limitations to Frohm's EPA claim.

## CONCLUSION

For the above reasons, the City's motion for summary judgment is granted in part and

denied in part. The motion is denied as to: (1) Frohm's retaliation claim based on the denial of

Durden's June 2021 request to upgrade the classification of Frohm's position from 0932 to 0941,

and (2) the merits of Frohm's Equal Pay Act claim. It is granted in all other respects.

**IT IS SO ORDERED.**

Dated: May 14, 2025

_____
JON S. TIGAR
United States District Judge

---

[4] Additionally, the cited paragraph from Frohm's declaration states, "An audit was never performed on my classification, nor was I provided with acting pay nor was the work taken away from me. *I don't understand this section*." ECF No. 90-2 ¶ 18 (emphasis added). As the City correctly suggests, this indicates that the cited paragraph is not competent evidence because, although she signed her declaration under penalty of perjury, Frohm apparently did not understand these statements.